E-FILED
Friday, 30 October, 2026 03:35:42 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

**BARBARA BARNES, as Independent Administrator of the Estate of JOHN BRADLEY BARNES, Deceased,**

**Plaintiff,**

**v.**

**GREENWOOD MOTOR LINES, Inc., a Foreign Corporation d/b/a R & L CARRIERS, INC. d/b/a R+L CARRIERS, MICHAEL CHRISTOPHER HEGGER, and WEST BEND INSURANCE COMPANY, f/k/a WEST BEND MUTUAL INSURANCE COMPANY, as subrogee of BLACK & COMPANY,**

**Defendants.**

**Case No. 21-cv-3257**

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

This case arises out of a vehicular accident involving two commercial trucks driven by an R+L Carriers employee, Michael Hegger, and the decedent, John Bradley Barnes. A jury found that Defendants were negligent with Mr. Barnes forty percent at fault for the accident. The jury awarded Plaintiff $10,025,000 in damages, reduced to $6,015,000 in accordance with fault. Before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Alternative Motion for Remittitur of the Amended Judgment. (Doc. 181). For the following reasons, Defendants' Motions are DENIED.

# I. DISCUSSION

## A. Renewed Motion for Judgment as a Matter of Law

Under Rule 50(b), "a district court can grant judgment as a matter of law if it finds that 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Dupree v. Younger*, 598 U.S. 729, 737 (2023) (quoting Fed. R. Civ. P. 50(a)) (emphasis removed). The movant "may raise only the grounds it advanced in the preverdict 50(a) motion." *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 604 (7th Cir. 2017). Evidence is construed "strictly in favor of the party who prevailed before the jury" and the district court "examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012). "The court does not make credibility determinations or weigh the evidence," *id.*, and is "obliged to leave the judgment undisturbed unless the moving party can show that no rational jury could have brought in a verdict against it," *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007) (internal quotation marks omitted and cleaned up).

Defendants argue there was insufficient evidence at trial for a rational jury to find that Mr. Hegger proximately caused the vehicular accident resulting in Mr. Barnes's injuries.[1] Specifically, Defendants contend that each of the various traffic statutes and regulations Plaintiffs relied on as examples of negligence failed to establish proximate causation. The jury was instructed on seven ways Mr. Hegger could have been negligent.

[1] Proximate causation is a necessary element to a wrongful death claim under Illinois law. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 33.

Proximate cause "is a factual question for the jury to decide and has two components: cause in fact and legal cause." *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34. "Cause in fact" means that "there is reasonable certainty that the injury would not have occurred 'but for' the defendant's conduct or where a defendant's conduct was a 'substantial factor' in bringing about the harm." *Id.* "Legal cause" is a question of policy: "How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" *Id.* Legal causation otherwise boils down to whether the injury was reasonably foreseeable. *Id.*

The Court finds the evidence sufficient to permit a rational jury to find in favor of Plaintiff. Mr. Hegger parked his commercial truck on the shoulder of a 70-mile-per-hour interstate in the dark, early morning hours. He reentered the highway from the shoulder before he had reached the speed of traffic. Specifically, Mr. Hegger's vehicle was traveling at about 18 miles per hour or less before Mr. Barnes's vehicle collided into his rear at 73 miles per hour. Mr. Barnes was approximately eight to eleven seconds behind when Mr. Hegger reentered the highway, but Plaintiff supplied a human factors expert who testified that 67% of attentive drivers facing this scenario would not have avoided impact, as an attentive driver would only have been able to perceive the speed that Mr. Hegger's vehicle was traveling only about four seconds before impact. There was also substantial evidence showing that Mr. Barnes was himself negligent, and the jury accounted for it by attributing forty percent of the fault to him. The jury, thus, plainly considered evidence favorable to Defendants and rationally found that Mr. Hegger should be liable—as he

was found sixty percent at fault—for a reasonably foreseeable accident. Therefore, the jury reasonably considered the evidence before it, viewed in favor of Plaintiff, and reached a rational verdict.

**B. Motion for a New Trial from Amended Judgment**

Federal Rule of Civil Procedure 59(a) provides that the district court "may, on motion, grant a new trial on all or some of the issues." A new trial is warranted "if the verdict was against the manifest weight of the evidence." *Mejia v. Cook County*, 650 F.3d 631, 633 (7th Cir. 2011) (collecting cases). In consideration of the motion, "the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Id.* (collecting cases). The "manifest weight" standard "balances a decent respect for the collective wisdom of the jury against a duty not to approve miscarriages of justice." *Id.* at 633 n.1 (internal quotation marks omitted). "[O]nly if no rational jury could have rendered the verdict" will the Court grant a new trial. *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012).

The Court finds that the jury's verdict was not against the manifest weight of the evidence. Defendants raise two grounds for overturning the verdict and contend their cumulative effect deprived them of a fair trial.

First, Defendants believe the Court improperly excluded impeachment evidence of Plaintiff's expert Dr. William Sawyer. During cross examination, defense counsel requested a sidebar and leave to state a quote from *Adams v. Cooper Industries*, No. 03-476,

2007 U.S. Dist. LEXIS 45569 (E.D. Ky. June 21, 2007), that "an examination of the studies relied on by Dr. Sawyer reveals that he has somewhat exaggerated their findings." *Id.* at *30. The Court denied leave as the statement was not "particularly questioning his credibility on this issue or any other issue" and was more a "general statement that he somewhat exaggerated their findings." (Tr. 6/17/2026 at 71:15–25). Any error was harmless as defense counsel nonetheless impeached Dr. Sawyer for overstating the literature. Concerning his testimony that tramadol[2] undergoes a "moderate to substantial" postmortem redistribution, the claim was belied by the article he cited in support, that tramadol postmortem redistribution is actually "low to moderate." Counsel then confronted Dr. Sawyer about a study available to him on postmortem redistribution that he had not cited in his analysis. In essence, the jury heard the substance of counsel's impeachment and the 2007 court statement would not have moved the needle.

Second, Defendants ask the Court to find plain error where Plaintiff's expert, Adam Grill, expressed emotion and personal feelings during redirect examination. Defendants did not object to said testimony during the trial. "Plain error review is available in civil cases only in the rare situation where a party can demonstrate that: (1) exceptional circumstances exist; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Henry v. Hulett*, 969 F.3d 769, 786

[2] The parties disputed the level of tramadol in Mr. Barnes's system, which is an opiate that can cause drowsiness. Postmortem redistribution is the level to which a substance in one's body will redistribute after death.

(7th Cir. 2020) (internal quotation marks omitted). Mr. Grill, when asked about his trucking educational courses, testified:

> Well, I know that I work in a unique profession. And a lot of what we do is—may not be well understood or well known to the general public. I'm sorry if I get a little emotional. One moment. It is important to me that good trucking companies are respected and admired and awarded for that. And it's equally as important to me that truck drivers and trucking companies that do something wrong, that they're also able to correct their behavior. Because I have a family, just like everyone else. And I want them to make it home at the end of the day. And my family has also spent their entire life, all the way back to my grandparents, working in the trucking industry so I also want to be respected, just like a lawyer, just like a doctor. And so it's incredibly important to us that we teach others what trucking is all about so that they're not misled or treat us wrong or don't defend us properly and they have a good understanding of what it takes to drive a truck. And that's why our school is open to anybody, whether you're trying to get a CDL or whether you're just trying to learn more about trucking and that's why we designed those programs because we don't want lawyers to be uneducated on what trucking is all about, regardless of whether they're defending trucking companies or whether they're a plaintiff in a trucking suit. And [] so we created a program to specifically educate them on how trucks work, how to drive trucks, how to inspect instruction, how to be low securement activities, how to comply with regulations and things of that nature. And so that's the purpose of those courses.

(Tr. 6/16/2026 at 58:9–59:13). The Court finds no unfair prejudice in the above testimony, let alone any exceptional circumstance that affected Defendants' substantial rights or caused a miscarriage of justice. The testimony conveyed Mr. Grill's passion and purpose for his work, and was responsive to Defendants' suggestion on cross examination that Mr. Grill had a litigation-driven bias because he trains and educates lawyers on trucking.

For the above reasons, Defendants have not identified any error at trial. Even assuming they have, the Court finds, after consideration of the record, that any cumulative effect from the two grounds discussed did not "so infect[] the jury's

deliberation that they denied [Defendants] a fundamentally fair trial" or that "the outcome of the trial probably would have been different" but for the errors. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) (internal quotation marks omitted).

**C. Alternative Motion for Remittitur of the Amended Judgment**

Under Illinois law, remittitur of damages is appropriate "only when a jury's award falls outside the range of fair and reasonable compensation, appears to be the result of passion or prejudice, or is so large that it shocks the judicial conscience; it should not be ordered if the award falls within the flexible range of conclusions which can reasonably be supported by the facts." *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 67 (internal quotation marks omitted).

The Court finds the jury's damages award reasonably supported by the facts. Before reduction, the jury awarded Plaintiff $10,025,000, broken down as: $525,000 for loss of benefits, goods and services; $2,500,000 for grief, sorrow and mental suffering; and $7,000,000 for loss of society and companionship. The total award was reduced to $6,015,000. Defendants believe $3,000,000 is a more appropriate figure based on a bench trial in the Northern District of Illinois[3] and several figures reached by settlements. For one, "settlement figures are inappropriate comparative measures of damages, as they represent the parties' calculations based on the risks and costs of trial, rather than an impartial determination of the proper amount of damages." *Bales v. United States*, No. 08-cv-1106, 2010 U.S. Dist. LEXIS 161140, at *6 (C.D. Ill. May 21, 2010). And two, Illinois

[3] *See generally Lane-Murray v. Payton*, No. 17-cv-8474, 2020 U.S. Dist. LEXIS 120269 (N.D. Ill. July 8, 2020) (awarding $1,761,759.09 after bench trial in wrongful death action).

courts "have traditionally declined to make such comparisons in determining whether a particular award is excessive." *Richardson v. Chapman*, 175 Ill. 2d 98, 114 (1997); *see also Hillman v. City of Chicago*, 14 F. Supp. 3d 1152, 1196 (N.D. Ill. 2014), *rev'd in part on other grounds*, 834 F.3d 787 (7th Cir. 2016) ("Although courts in the Seventh Circuit typically compare a damages award with damages awards in similar cases . . . that is not the practice in Illinois courts[.]").

Ms. Barnes lost her husband, and her children lost their father. Ms. Barnes is deaf. In her words, her husband "was my ears" and "he would use his voice for me." (Tr. 6/17/2026 at 102:24–103:8). He would help her with everyday tasks and was "the glue" to the family. (*Id.* at 25:8–20). Though Defendants contend the jury's award for loss of benefits, goods and services lacked economic evidence, it is clear from the record that Mr. Barnes's support for his family went beyond his mere presence as a husband and father. The jury, furthermore, was instructed that "pecuniary loss may include loss of benefits, goods, services, society, and sexual relations," that "where a decedent leaves lineal next of kin, the law recognizes a presumption that the lineal next of kin have sustained some substantial pecuniary loss by reason of the death," and that the jury may consider several factors. (Tr. 6/23/2026 at 58:3–59:9). Therefore, the Court finds that the jury's award of damages fell within the flexible range of conclusions that could be reasonably supported by the evidence.

## II. CONCLUSION

Based on the foregoing reasons, Defendants' Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Alternative Motion for Remittitur of the Amended Judgment (Doc. 181) are DENIED. Defendants' earlier motions requesting the same relief (Doc. 164) are MOOT per entry of the Amended Judgment (Doc. 166).

ENTER: October 30, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE